UNITED STATES of America ex rel. Fernando BERMUDEZ, Petitioner,

v.

Leon J. VINCENT, Warden, Green Haven Correctional Facility, Stormville, New York, Respondent.

Jose LAUREANO, Petitioner,

v.

SUPERINTENDENT, Auburn Correctional Facility and DEPARTMENT OF CORRECTIONAL SERVICES, Respondents.

Jose BONILLA, Petitioner,

v.

David HARRIS, Superintendent, Greenhaven Correctional Facility, Respondent.

Nos. 77 Civ. 2048 (MEL), 78 Civ. 1023 (MEL) and 79 Civ. 1265 (MEL).

United States District Court, S. D. New York.

June 27, 1979.

Prisoners' Legal Services of New York, New York City, for petitioners Bermudez and Laureano; Amanda Potterfield, Daniel J. Steinbock, New York City, of counsel.

The Legal Aid Society, New York City, for petitioner Bonilla; William E. Hellerstein, Diana Budzanoski, New York City, of counsel.

Robert Abrams, Atty. Gen. of the State of New York, New York City, for respondents; Clement H. Berne, Gerry E. Feinberg, New York City, of counsel.

LASKER, District Judge.

On March 12, 1974, Fernando Bermudez, Jose Laureano and Jose Bonilla were convicted in state court of acting in concert to murder William Travieso. No single defendant was charged with having been the actual killer. Their convictions were affirmed without opinion by the Appellate Division, and leave to appeal to the Court of Appeals was denied. All three now petition for writs of habeas corpus on the ground that their joint representation at trial de-

nied them their Sixth Amendment right to effective assistance of counsel.

The petitions of Fernando Bermudez and Jose Laureano were referred for recommendation to Magistrate Gershon. Since the issues raised in Bonilla's petition, filed subsequently, are identical to those raised in the other two, the Magistrate's Report will be deemed to apply to it as well.

In a 35 page opinion, the Magistrate recommends that the writs be granted. Because we adopt her findings and conclusion, we make no attempt to duplicate her exhaustive and well-reasoned analysis but deal here only with the objections to her Report made by the State.

*Exhaustion of State Court Remedies*

It is not disputed that the same claim raised here was presented to the state courts. However, additional facts have been introduced as part of the habeas proceedings which the State contends materially alter the petitioners' argument and require that the cases be sent back to the state courts to afford those courts a "fair opportunity" to review the case in its allegedly new posture.

In their state court appeals no claim was made—at least by Bermudez or Laureano—that defense counsel had actually raised the issue of conflict of interest with the trial court. Instead, petitioners' claim was based solely on the trial judge's failure to exercise his affirmative obligation to inquire into the possibility of a conflict. However, in connection with the habeas proceedings in this court, petitioners have introduced an affidavit from their trial counsel who states that, in an off-the-record discussion, he advised the trial judge that a conflict of interest existed between his clients and requested that separate counsel be appointed. The affidavit further states that the judge dismissed counsel's request as a "stalling tactic". (Affidavit of Stanley Siegel, April 27, 1977, ¶ 6) The State also supplemented its papers before this court by an affidavit from the trial judge who denies that the conversation described by defense counsel

took place and states that he instructed counsel, in an unrecorded conversation, to ask his clients whether they wished to obtain separate counsel but was advised by counsel that they did not. (Affidavit of the Honorable William Kapelman, May 25, 1977, ¶¶ 4–7) Somewhat surprisingly, following the issuance of the Magistrate's Report, the State filed an additional affidavit in which the trial judge states that his conversation with defense counsel on the question of conflict of interest took place in the presence of petitioners and that, when questioned directly by the judge, all three men agreed that they wished to proceed with joint counsel. (Affidavit of April 23, 1979, ¶ 5)

The Magistrate concluded that the additional information offered in support of the petitioners' position did not "critically affect" the claim presented to the state courts. Moreover, she found that it would be futile to remand the case to the state since the appeal of Jose Bonilla, filed after those of the other two, referred to the conversation attested to by defense counsel, and his conviction was nevertheless affirmed. However, the State relies on *Holloway v. Arkansas*, 435 U.S. 475, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978), to argue that the new facts significantly alter petitioner's position. In *Holloway*, the Supreme Court indicated that the degree of prejudice necessary to be established on appeal would vary depending on whether or not defense counsel had raised the issue of prejudice at trial, and held that, in a situation in which counsel repeatedly moved on the record for appointment of separate counsel, prejudice would be presumed.

■ Despite the State's contentions, we are not persuaded that there is a significant likelihood that the new evidence in the record would alter the disposition of the matter by the state courts. Defense counsel's representations are considerably undercut by the assertion of the trial judge also presented for the first time here that he himself rather than defense counsel raised the possibility of conflict with petitioners. Moreover, even if taken at full value, it is doubtful whether counsel's brief, off-the-record conversation brings this case within the ambit of *Holloway* in which defendants argued forcefully on at least three occasions that they should be granted separate counsel.[1] The concept of futility must be interpreted to encompass notions of economy and fairness. Thus unless new material creates at least a moderate likelihood of a different result, it is futile to send an action back to the state courts. Here, the likelihood of a different outcome is simply too speculative to justify the duplication of effort and the frustration to the parties which a remand to the state court would entail.

*Prejudice*

■ The State contends that, far from being prejudiced by joint representation, petitioners were assured "a unified defense and thereby avoided incriminating each other." (Objections to the Magistrate's Report, p. 20) However, as the Magistrate pointed out, on the facts of this case a unified defense was no defense at all. It is undisputed that all three defendants were at the scene of the crime and that the only other people present were relatives of the

---

1. Several other factors cast doubt on the likelihood that the state courts would reverse their position. One factor is the already heavy burden of proof met by the prosecution on appeal. Before the Appellate Division petitioners argued, and the State conceded, that the trial judge had not inquired into the possibility of conflict. This circumstance placed the burden on the prosecution of proving an absence of prejudice from joint representation, *United States v. DeBerry*, 487 F.2d 448, 453–54 n. 6 (2d Cir. 1973), a burden which the Appellate Division, which affirmed without opinion, apparently found was easily met. Thus the possibili-

ty of a different result is minimized by this prior conclusion that petitioners suffered no prejudice at trial. Finally, it is of some significance that Bonilla did refer in passing in his appellate proceedings to the conversation described by his trial lawyer. Although we agree with the State that the issue was placed before the Appellate Division too casually for us to conclude that that court did in fact rely on the proposition, this factor at least raises a question as to whether the state courts have not already passed on the significance of the new evidence.

deceased who had come to his rescue. In the face of this overwhelming evidence that one of the three defendants was responsible for the murder, to argue, as defense counsel did at trial, that all three men were innocent was indeed a hollow defense which inevitably redounded to the disadvantage of at least two, if not all three, defendants. See the Magistrate's Report, p. 23.

However, while the evidence rendered a unified defense extremely implausible, it left open the possibility that one or more of the defendants could successfully dissociate himself from the murder itself. The dead man was stabbed only once. Moreover, the testimony at trial varied as to the involvement of each defendant in the fight and as to which defendant—or defendants—was seen straddling Travieso with a knife. (Tr. 100, 106–07, 115–6, 143, 161) Although the State argues that "possible differing degrees of participation were without legal significance" (Objections, p. 20), this argument ignores the burden on the prosecution of establishing that all three defendants possessed the requisite intent to aid in the commission of a murder and that, by dissociating himself from the killing, or by shifting the blame onto another, a defendant might have convinced the jury that he lacked such intent. Clearly, such a tactic was impossible so long as all three defendants were represented by the same attorney.[2]

Finally, we agree with the Magistrate's conclusion that the prejudice from joint representation extended to the plea bargaining stage.[3] Although petitioners were offered an "all or nothing" plea package by the prosecution, there is a significant likelihood that here, where the State lacked conclusive evidence as to which of the three defendants actually committed the stabbing, an independent lawyer might have worked out a special "deal" for his client in exchange for an agreement to testify. See *Holloway v. Arkansas, supra,* 435 U.S. at 490, 98 S.Ct. 1173.

The Magistrate's Report is affirmed and incorporated in this decision. The petitions of Fernando Bermudez, Jose Laureano and Jose Bonilla are granted, and their convictions will be set aside unless they are granted a new trial within ninety days.

It is so ordered.

---

**2.** The State also contends that, in light of the new evidence concerning the trial judge's investigation into the possibility of a conflict of interest, the burden is on petitioners to establish actual prejudice rather than on the prosecution, as the Magistrate found, to prove an absence of prejudice. Since we agree with the Magistrate that petitioners have in any event established that prejudice did exist, it is unnecessary to decide this question.

**3.** This contention is raised only by Fernando Bermudez.