**Herbert Ray ARMSTRONG, Petitioner**

v.

**The PEOPLE of the State of Colorado, Respondent.**

**Ann ARMSTRONG, Petitioner**

v.

**The PEOPLE of the State of Colorado, Respondent.**

Nos. 83SC59, 83SC74.

Supreme Court of Colorado, En Banc.

May 28, 1985.

Rehearing Denied June 24, 1985.

David F. Vela, Colorado State Public Defender, James England, Deputy State Public Defender, Diana L. DeGette, Sp. Deputy State Public Defender, Denver, and Gary A. Seckman, Colorado Springs, for petitioners.

Duane Woodard, Atty. Gen., Charles B. Howe, Deputy Atty. Gen., Joel W. Cantrick, Sol. Gen., Laura E. Udis, Asst. Atty. Gen., Denver, for respondent.

KIRSHBAUM, Justice.

We granted certiorari to review two decisions of the Colorado Court of Appeals, *People v. Armstrong,* 664 P.2d 716 (Colo. App.1983) and *People v. Armstrong,* 664 P.2d 713 (Colo.App.1982), affirming the convictions of defendants Herbert and Ann Armstrong for their participation in an armed robbery. The cases have been consolidated because of an issue common to both: whether the joint representation of defendants by the same trial counsel deprived either or both of them of the right to effective assistance of counsel.[1] We reverse both convictions and remand with directions.

I

By indictment, defendants, husband and wife, were charged with several offenses in connection with an armed robbery of the Motor City Mini Warehouse (the Warehouse) in Colorado Springs that occurred in May of 1979.[2] Both defendants were charged with conspiracy to commit aggra-

---

1. We also granted the petition of Ann Armstrong to consider whether the trial court erred in denying her motion for separate trials and in permitting the prosecution to ask certain questions of her on cross-examination. Because our resolution of the constitutional question requires a retrial of both defendants, we do not address these issues.

2. A third individual was also charged in the indictment with aggravated robbery and conspiracy to commit aggravated robbery. He filed a motion to sever, which motion was granted, and he was ultimately acquitted of the charges filed against him.

vated robbery in violation of section 18–2–201, 8 C.R.S. (1978). Herbert was also charged with aggravated robbery,[3] second degree kidnapping,[4] aggravated motor vehicle theft,[5] second degree burglary,[6] and felony theft.[7] The trial court reduced the kidnapping charge to false imprisonment[8] and dismissed the felony theft charge. The jury returned guilty verdicts on all counts submitted for jury deliberation.

At trial a co-conspirator witness testified that he, Herbert, Ann and others met to plan the robbery. He stated that Ann was directed to telephone the manager of the Warehouse, Earl Fruin, and tell him that a "Sergeant Anderson" of the Colorado Springs Police Department bomb squad would be coming over to investigate some explosives stored at the Warehouse. The co-conspirator also stated that he and Herbert unsuccessfully attempted to rob the Warehouse on a prior occasion. Fruin, who lived with his wife in an apartment at the Warehouse, testified that such a phone call was received the night of the robbery, that several persons directed by a "Sergeant Anderson" robbed the Warehouse and that Herbert was one of those persons.

Ann Armstrong elected to testify in her own defense. She stated on direct examination that she had been at home during the time the robbery occurred. In response to specific questions from defense counsel, she also testified that Herbert had been home with her at that time and also at the time the alleged prior robbery attempt occurred. Throughout the proceedings the Armstrongs were represented by the same defense attorney. They did not object to this joint representation, and were not asked by the trial court whether they had any such objection. Additional facts pertinent to their claim of ineffective assistance of counsel will be reviewed as appropriate to the resolution of that issue.

## II

■ An accused in a criminal prosecution is guaranteed the right to effective assistance of counsel by the United States and Colorado Constitutions. U.S. Const. amends. VI, XIV; Colo. Const. art. II, § 16. This right is fundamental to the concept of a fair trial in our adversary system. *Holloway v. Arkansas*, 435 U.S. 475, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978). It serves both to protect the innocent from an unjust conviction and to maintain the integrity of the process by which society condemns a wrongdoer. *See People v. German*, 674 P.2d 345 (Colo.1983).

■ The constitutional right to effective assistance of counsel may be violated when the accused is represented by counsel who simultaneously represents competing interests. *Cuyler v. Sullivan*, 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980); *Glasser v. United States*, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942); *People v. Castro*, 657 P.2d 932 (Colo.1983). Although joint representation does not *per se* violate the right to effective assistance of counsel, *Holloway*, 435 U.S. at 482, 98 S.Ct. at 1177, and although a defendant may waive the right to conflict-free representation if such waiver is made voluntarily and with full knowledge of the actual conflict, it is recognized that representation by one attorney of two or more defendants in prosecutions arising from a single criminal episode invariably creates the possibility that a conflict of interest will arise. *Cuyler*, 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333.

---

3. § 18–4–302, 8 C.R.S. (1978).

4. *Id.* § 18–3–302. This statute was subsequently repealed and reenacted. *See* § 18–3–302, 8 C.R.S. (1984 Supp.).

5. § 18–4–409(2), 8 C.R.S. (1978). This section has also been amended since the alleged crimes occurred. *See* § 18–4–409(2), 8 C.R.S. (1984 Supp.).

6. § 18–4–203, 8 C.R.S. (1978). This section has been amended. *See* § 18–4–203, 8 C.R.S. (1984 Supp.).

7. § 18–4–401, 8 C.R.S. (1978). This section has been amended. *See* § 18–4–401, 8 C.R.S. (1984 Supp.).

8. § 18–3–303, 8 C.R.S. (1978).

When a defendant timely objects to joint representation due to possible conflicts of interest, the trial court is constitutionally bound either to appoint separate counsel or to ascertain that the risk of such conflicts is so remote that the right to effective assistance of counsel will not be endangered. *See Holloway,* 435 U.S. at 484, 98 S.Ct. at 1178; *Glasser,* 315 U.S. 76, 62 S.Ct. 467.[9]

In discussing the posture of a defendant who does not raise any objection at trial to joint representation but in subsequent proceedings asserts a denial of the right to effective assistance of counsel on the basis of an actual conflict of interest, the Supreme Court stated in *Cuyler* that the defendant "must demonstrate that an actual conflict of interest adversely affected his lawyer's performance." 446 U.S. at 348, 100 S.Ct. at 1718. However, the Court also indicated that such defendant "need not demonstrate prejudice." *Cuyler,* 446 U.S. at 349–50, 100 S.Ct. at 1718–19. In *Holloway,* the Court reiterated the principle that "the assistance of counsel is among those 'constitutional rights so basic to a fair trial that their infraction can never be treated as harmless error.'" 435 U.S. at 489, 98 S.Ct. at 1181 (quoting *Chapman v. California,* 386 U.S. 18, 23, 87 S.Ct. 824, 827, 17 L.Ed.2d 705 (1967)). The Court then discussed this basic right in the following pertinent language:

> Joint representation of conflicting interests is suspect because of what it tends to prevent the attorney from doing.... Generally speaking, a conflict may also prevent an attorney from challenging the admission of evidence prejudicial to one client but perhaps favorable to another, or from arguing at the sentencing hearing the relative involvement and culpability of his clients in order to minimize the culpability of one by emphasizing that of another. Examples can be readily multiplied.
>
> . . . .
>
> But in a case of joint representation of conflicting interests the evil—it bears repeating—is in what the advocate finds himself compelled to *refrain* from doing, not only at trial but also as to possible pretrial plea negotiations and in the sentencing process.

*Holloway,* 435 U.S. at 489–90, 98 S.Ct. at 1181–82 (emphasis in original).

There is some tension between the description of the defendant's burden as stat-

---

9. In *Cuyler v. Sullivan,* the Supreme Court ruled that the Constitution does not require state trial courts to initiate an inquiry into whether joint representation entails a conflict of interests, "[u]nless the trial court knows or reasonably should know that a particular conflict exists." 446 U.S. at 347, 100 S.Ct. at 1717. Rule 44(c) of the Federal Rules of Criminal Procedure, effective December 1, 1980, makes such an inquiry mandatory in federal criminal trials. It provides:

> Whenever two or more defendants have been jointly charged pursuant to Rule 8(b) or have been joined for trial pursuant to Rule 13, and are represented by the same retained or assigned counsel or by retained or assigned counsel who are associated in the practice of law, the court shall promptly inquire with respect to such joint representation and shall personally advise each defendant of his right to the effective assistance of counsel, including separate representation. Unless it appears that there is good cause to believe no conflict of interest is likely to arise, the court shall take such measures as may be appropriate to protect each defendant's right to counsel.

Fed.R.Crim.P. 44(c). The rule reflects what most United States Courts of Appeals have indicated is the desired practice. *See United States v. Mers,* 701 F.2d 1321 (11th Cir.), *cert. denied,* —— U.S. ——, 104 S.Ct. 482, 78 L.Ed.2d 679 (1983); *United States v. Agosto,* 675 F.2d 965 (8th Cir.), *cert. denied,* 459 U.S. 834, 103 S.Ct. 77, 74 L.Ed.2d 74 (1982); *Abraham v. United States,* 549 F.2d 236 (2d Cir.1977) (per curiam); *United States v. Garcia,* 517 F.2d 272 (5th Cir. 1975); *United States v. Truglio,* 493 F.2d 574 (4th Cir.1974); *Campbell v. United States,* 352 F.2d 359 (D.C.Cir.1965).

In *Castro,* decided after the trial occurred in this case, this court stated that defense counsel "should" make a record of the potential conflicts of interest and should advise the trial court that "as complete a disclosure as possible has been made to the defendant." 657 P.2d at 946 n. 10. Thereupon, the trial court should inquire whether the defendant understandingly waives the right to conflict-free representation. *Id.*

ed by the majority in *Cuyler* and the suggestion by the majority in *Holloway* that a presumption of prejudice arises when a defendant establishes that an actual conflict of interest existed at trial. *See Cuyler,* 446 U.S. at 354–58, 100 S.Ct. at 1721–23 (Marshall, J., concurring in part and dissenting in part). The discussion of this issue in the majority opinion in *Cuyler* is itself not free of conflicting language. *See* Note, *Conflicts of Interest in the Representation of Multiple Criminal Defendants: Clarifying* Cuyler v. Sullivan, 70 Geo.L.J. 1527, 1537, 1550–51 (1982). In *Castro,* this court concluded that the substantial conflict of interest there present—the representation of a defendant in a criminal case by the same attorney who simultaneously represented the defendant's prosecuting attorney in pending criminal and civil litigation—in itself established a violation of defendant's right to effective assistance of counsel. In this case, defendants contend that the arguably more restrictive test of *Cuyler* has been satisfied, in that the performance of defense counsel at trial was adversely affected by a conflict of interest. Because the record on appeal supports this contention, we need not further examine the distinctions between *Cuyler* and *Castro.*

*Calvaresi,* 198 Colo. 321, 600 P.2d 57 (1979), one of three co-defendants in an arson case asserted for the first time on appeal that she had received inadequate and ineffective assistance of trial counsel. Citing *Morse v. People,* 168 Colo. 494, 452 P.2d 3 (1969), and *Lucero v. People,* 158 Colo. 568, 409 P.2d 278 (1965), this court declined to consider the issue and noted that the defendant was free to raise it in a Crim.P. 35(b) [11] application for post-conviction relief.

Notwithstanding our decision in *Calvaresi,* we have also recognized that, pursuant to the provisions of Crim.P. 52(b), appellate jurisdiction is not limited to issues presented in a motion for a new trial in matters constituting "plain error affecting the substantial rights of the defendant." *People v. Peterson,* 656 P.2d 1301, 1303 (Colo. 1983); *cf. Vigil v. People,* 196 Colo. 522, 587 P.2d 1196 (1978). Whether a defendant has received effective assistance of counsel is a question concerning a fundamental constitutional right. *Holloway,* 435 U.S. 475, 98 S.Ct. 1173, 55 L.Ed.2d 426; *Castro,* 657 P.2d 932. Therefore, the Court of Appeals had jurisdiction to consider the issue. *See People v. Bridges,* 620 P.2d 1 (Colo. 1980); *People v. Archuleta,* 180 Colo. 156, 503 P.2d 346 (1972).

### A.

As a preliminary matter, we address the People's argument that because defendants did not raise the issue of ineffective assistance of counsel at trial or in their motion for a new trial, that issue should not be considered on appeal.[10] In *People v.*

### B.

Herbert maintains that an actual conflict of interest existed at trial because he and Ann were charged with differing degrees of criminal activity. Ann contends that a conflict of interest existed because of a disparity in the evidence introduced

---

10. At the time of trial, Crim.P. 33(a) provided in pertinent part: "Only questions presented in [a new trial] motion will be considered by the appellate court on review."

    The rule governing motions for new trial has been amended, effective July 1, 1985, to provide in pertinent part:

    (a) *Motions for New Trial or Other Relief Optional.* The party claiming error in the trial of any case may move the trial court for a new trial or other relief. If such a motion is filed, the trial court may dispense with oral argument on the motion after it is filed.

    (b) *Motions for New Trial or Other Relief Directed by the Court.* The court may direct a

party to file a motion for a new trial or other relief on any issue. The failure of the party to file such a motion when so ordered shall preclude appellate review of the issues ordered to be raised in the motion. The party, however, need not raise all the issues it intends to raise on appeal in such motion to preserve them for appellate review.

11. Crim.P. 35 has been revised since *Calvaresi.* The appropriate subsection under which to raise such an issue is currently found in Crim.P. 35(c).

against herself and against her husband. We agree with these arguments.

Numerous commentators have recognized that when co-defendants are accused of varying degrees of participation in an episode of criminal conduct, joint representation invariably places defense counsel in the middle of conflicting interests. *See* Geer, *Representation of Multiple Criminal Defendants: Conflicts of Interest and the Professional Responsibilities of the Defense Attorney*, 62 Minn.L.Rev. 119 (1978); Lowenthal, *Joint Representation in Criminal Cases: A Critical Appraisal*, 64 Va.L.Rev. 939, 943–44 (1978); Note, *Developments in the Law—Conflicts of Interest in the Legal Profession*, 94 Harv.L. Rev. 1244, 1381–82 (1981).[12] For one defendant, the disparity should be emphasized to demonstrate the weakness of the case against and lesser culpability of that defendant. For the other defendant, any disparity in the quantity or quality of the evidence should be ignored or diminished. When considering cases involving substantial disparities of alleged criminality, several courts have concluded that a conflict of interest did arise from the circumstances of those cases. *See, e.g., Camera v. Fogg*, 658 F.2d 80 (2d Cir.), *cert. denied*, 454 U.S. 1129, 102 S.Ct. 981, 71 L.Ed.2d 117 (1981); *United States v. Laura*, 500 F.Supp. 1347 (E.D.Pa.1980), *aff'd*, 667 F.2d 365 (3rd Cir. 1981); *United States ex rel. Bermudez v. Vincent*, 472 F.Supp. 448 (S.D.N.Y.1979), *aff'd*, 657 F.2d 262 (2d Cir.1981), *cert. denied*, 452 U.S. 931, 101 S.Ct. 3066, 69 L.Ed.2d 431 (1981); *People v. Gardner*, 406 Mich. 369, 279 N.W.2d 785 (1979) (per curiam), *cert. denied*, 444 U.S. 1093, 100 S.Ct. 1061, 62 L.Ed.2d 783 (1980); *People v. Biondo*, 67 A.D.2d 1003, 413 N.Y.S.2d 738 (1979). These decisions recognize that when a substantial disparity of evidence or of charges exists, it would be unusual if an actual conflict of interest did not also exist.

In this case Herbert and Ann were charged with greatly divergent criminal conduct. Furthermore, the great bulk of the evidence introduced at trial was directed toward Herbert's alleged culpability. Because he represented both defendants, defense counsel could not properly refer to the disparate charges of criminal conduct or comment about this state of the evidence to the jury. We conclude that under these

---

**12.** The American Bar Association strongly discourages joint representation in criminal cases, with the following exception:

When after careful investigation, it is clear that:
(i) no conflict is likely to develop;
(ii) the several defendants have given an informed consent to such multiple representation; and
(iii) the consent of the defendants is made a matter of judicial record. In determining the presence of consent by the defendants, the trial judge should make appropriate inquiries respecting actual or potential conflicts of interest of counsel and whether the defendants fully comprehend the difficulties that an attorney sometimes encounters in defending multiple clients.

American Bar Association, *Standards for Criminal Justice* § 4–3.5(b) (2d ed. 1980).

Our Code of Professional Responsibility provides the following limits on the representation of conflicting interests:

(A) A lawyer shall decline proffered employment if the exercise of his independent professional judgment in behalf of a client will be or is likely to be adversely affected by the acceptance of the proffered employment, or if it would be likely to involve him in representing differing interests, except to the extent permitted under DR5–105(C).

(B) A lawyer shall not continue multiple employment if the exercise of his independent professional judgment in behalf of a client will be or is likely to be adversely affected by his representation of another client, or if it would be likely to involve him in representing differing interests, except to the extent permitted under DR5–105(C).

(C) In the situations covered by DR5–105(A) and (B), a lawyer may represent multiple clients if it is obvious that he can adequately represent the interest of each and if each consents to the representation after full disclosure of the possible effect of such representation on the exercise of his independent professional judgment on behalf of each.

C.P.R. DR5–105.

One difficulty with the exception articulated in § 4–3.5(b)(i) of the ABA Standards is the assumption that multiple defendants to a single criminal charge in many circumstances might *not* have conflicting or competing interests. A more realistic assumption would be that in such situations at least one interest of each defendant will probably conflict with one interest of the others.

circumstances an actual conflict of interest existed at trial.

The record in this case demonstrates that the performance of defendants' trial counsel was adversely affected as a result of the conflict of interest. Several incidents disclosed by the record support this conclusion. First, defense counsel at no time compared the amount and gravity of the evidence against Herbert with the minimal and circumstantial nature of the evidence introduced to establish Ann's guilt. This omission can be explained only by the observation that such argument would have emphasized the stronger case established against Herbert.

A second incident concerns defense counsel's use of a detective's original notes of his interview with Earl Fruin, the manager of the Warehouse. These notes, undisclosed to counsel prior to trial, revealed that Fruin initially told the detective that "he did answer the phone at the Mini-Warehouse upstairs. And when he went to the phone, he did talk to a party that was a male." Thus, according to the detective's notes, Fruin did not speak to a female. However, on direct examination at trial Fruin stated that his wife took a telephone call from a woman on the night of the robbery, that when he was called to the telephone he first spoke with a woman, and that then he talked to a man who stated that a bomb squad was on the way to the Warehouse. Although it would have strengthened Ann's defense immensely, defense counsel did not stress this inconsistency by arguing that a man, possibly Herbert, placed the fateful call. Of course, any such argument would only have strengthened the case against Herbert. To the extent evidence that Ann did not telephone the Fruins was introduced, in the context of the joint trial and in light of the testimony of the co-conspirator, such evidence in itself strengthened the case against Herbert.

Defense counsel's conduct with respect to Ann's testimony further demonstrates that his performance was adversely affected as a result of the conflicting interests of the defendants. On direct examination Ann stated that she and Herbert were at home at the time of the robbery and that Herbert was also at home during the alleged previous robbery attempt. This testimony was elicited as the result of specific questions about Herbert. Independent counsel for Ann might well have dissuaded her from testifying in support of Herbert's alibis because such testimony inevitably linked her credibility to the stronger case established against Herbert. On the other hand, independent counsel for Herbert would not have commented in closing argument upon the fact that Ann chose to testify, because such comment would have encouraged the jury to draw negative inferences from Herbert's decision not to testify.[13] Defense counsel was placed in the impossible position of either having to ignore the issue of Ann's credibility in closing argument, to her detriment, or commenting upon it, to the detriment of Herbert.

The Court of Appeals stated that even if independent counsel for Herbert would have refrained from examining the detective on the content of his notes, "we fail to see how this action prejudiced [Herbert]." *People v. Armstrong*, 664 P.2d 713, 715 (Colo.App.1982). The Court of Appeals also concluded that Herbert had not demonstrated that he had been prejudiced by defense counsel's comments in closing argument respecting Ann's testimony. Similarly, the Court of Appeals concluded that Ann did not demonstrate prejudice resulting from defense counsel's failure to exploit the inconsistencies in the testimony of

---

**13.** Defense counsel's closing argument contained the following comments:

> You heard Ann Armstrong testify, and you saw her testify. And you didn't hear any evidence that she contradicted herself. You didn't hear any evidence that she's told numerous stories at various times. You didn't

hear any evidence that she's got a felony conviction or anything like that....

> As you recall, I asked all of you at the beginning of the case if you would weigh and consider the testimony of my clients if they testified. And I submit she testified without contradiction.

Fruin which were revealed by the late-discovered notes of the investigating detective. Such language suggests that defendants who are represented at trial by a single attorney and who do not object to such representation must, in addition to establishing that an actual conflict of interest existed and that such conflict adversely affected the attorney's representation of them, establish some further prejudice to meet their burden of demonstrating a denial of the constitutional right to effective assistance of counsel. Such suggestion is not warranted.

■ As we have indicated, in cases in which the issue of the fundamental constitutional right to effective assistance of counsel arises from the fact of joint representation, when an accused demonstrates that an actual conflict of interest was present at trial and that the conflict adversely affected the representation provided by defense counsel, no further demonstration of prejudice is required to satisfy the "plain error" standard. *Cuyler*, 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333; *Castro*, 657 P.2d 932. In such cases the prejudice is all pervasive, commencing with initial tactical and strategic decisions and continuing through preparation of what should be included in new trial motions. The Court of Appeals erred in suggesting that once a real conflict of interest is established, a defendant asserting ineffective assistance of counsel because of joint representation must not only demonstrate an adverse effect on defense counsel's representation, but must also prove that such conduct affected the jury's decision.[14]

In her petition for certiorari, Ann sought review of the conclusions of the Court of Appeals that the trial court did not err in denying her motion for severance and in overruling objections of defense counsel to questions asked by the prosecuting attorney in cross-examination of Ann concerning the number and type of weapons in the Armstrong house. Because we have concluded that the defendants must be afforded new trials, the issue of severance and questions concerning the proper scope of cross examination will probably arise, if at all, in very different evidentiary and legal circumstances than were present at trial. We therefore do not address those issues in this opinion.

We conclude that both defendants have demonstrated that an actual conflict of interest was present at trial and that the representation afforded to each of them by their single defense counsel was adversely affected by that conflict of interest. Accordingly, the judgments of the Court of Appeals and the judgments of conviction are reversed, and the cases are remanded to the Court of Appeals with directions to remand to the trial court for a new trial with separate counsel for each defendant, absent a voluntary and knowing waiver by each defendant of the right to conflict-free representation.

Justice Quinn specially concurs and Justice Neighbors joins in the special concurrence.

---

14. In *People v. Romero*, 189 Colo. 526, 543 P.2d 56 (1975), this court also equated a "real conflict of interest" with "prejudice." *Id.* at 528, 543 P.2d at 57 (quoting *United States v. Lovano*, 420 F.2d 769, 773 (2d Cir.), *cert. denied*, 397 U.S. 1071, 90 S.Ct. 1515, 25 L.Ed.2d 694 (1970)). *Romero*, decided before *Holloway* and *Cuyler*, reflected courts' confusion over whether *Glasser* required a finding of prejudice in addition to a finding of conflict to sustain a constitutional claim. *See Holloway*, 435 U.S. at 487–88, 98 S.Ct. at 1180–81; Geer, *Representation of Multiple Criminal Defendants: Conflicts of Interest and the Professional Responsibilities of the Defense Attorney*, 62 Minn.L.Rev. 119, 122–23 (1978); Note, *Conflict of Interest in the Representation of Multiple Criminal Defendants: Clar-ifying* Cuyler v. Sullivan, 70 Geo.L.J. 1527, 1532–33 (1982). As the Note demonstrates, the word "prejudice" may be used to connote different things and in *Glasser* the Court was not clear about which connotation it intended. *See* Note, *supra*, at 1532–33; *see also Cuyler*, 446 U.S. at 354–58, 100 S.Ct. at 1721–23 (Marshall, J., concurring in part and dissenting in part). Of more immediate concern, however, is the *Cuyler* Court's failure to explain the procedural or substantive requirements of the actual conflict/adverse affect rule adopted in that case. *See* Note, *supra*, at 1536–37. Nonetheless, after *Holloway* and *Cuyler*, it is clear, at least, that a defendant is not required to establish that but for the conflict he would not have been convicted.

QUINN, Justice, specially concurring:

I specially concur in the judgment reversing the convictions of both defendants on the basis that they were denied their constitutional right to the effective assistance of counsel. U.S. Const. amends. VI & XIV; Colo. Const. art. II, § 16. I do not read *Cuyler v. Sullivan,* 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980), however, as requiring a defendant who raised no objection to trial counsel's multiple representation to demonstrate not only that there was an actual conflict of interest at trial but also that the lawyer's simultaneous representation of conflicting interests had an adverse effect on the lawyer's trial performance. I believe *Cuyler* can and should be read to require a defendant to demonstrate only that there existed an actual conflict of interest at trial. Indeed, if a showing of adverse effect were required, I would affirm the judgment of conviction entered against Herbert Armstrong for aggravated robbery, conspiracy to commit aggravated robbery, false imprisonment, aggravated motor vehicle theft, and second degree burglary. I view the record as only supporting the conclusion that trial counsel's performance was adversely affected in his defense of the single charge of conspiracy to commit aggravated robbery filed against Ann Armstrong. Because, however, I believe that a claim of ineffective assistance of counsel requires only a demonstration that trial counsel was faced with an actual conflict of interest in simultaneously representing multiple defendants in a joint criminal prosecution, I concur in the reversal of the judgments of conviction entered against both Herbert Armstrong and Ann Armstrong.

When a constitutional right to counsel exists, there is a correlative right to conflict-free representation. *E.g., Wood v. Georgia,* 450 U.S. 261, 101 S.Ct. 1097, 67 L.Ed.2d 220 (1981); *Holloway v. Arkansas,* 435 U.S. 475, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978). An actual conflict of interest in joint representation is clearly present when the separate interests of the defendants significantly diverge in relation to an important factual issue in the case or with respect to basic trial strategy. Thus, a lawyer representing codefendants in the same criminal prosecution would necessarily face a conflict of interest in those circumstances where material evidence favorable to one client is prejudicial to the other, or where plausible argument on the evidence would be beneficial to one defendant but detrimental to the other. *See Baty v. Balkcom,* 661 F.2d 391 (5th Cir. 1981), *cert. denied,* 456 U.S. 1011, 102 S.Ct. 2307, 73 L.Ed.2d 1308 (1982); *Camera v. Fogg,* 658 F.2d 80 (2d Cir.1981), *cert. denied,* 454 U.S. 1129, 102 S.Ct. 981, 71 L.Ed.2d 117 (1981).

I recognize that a number of courts have read the Supreme Court's opinion in *Cuyler* to mean that a defendant who failed to object to trial counsel's simultaneous representation of another defendant must establish, as necessary components of an ineffective assistance of counsel claim, that an actual conflict of interest existed at trial and that the conflict adversely affected trial counsel's performance. *E.g., Parker v. Parratt,* 662 F.2d 479 (8th Cir.1981), *cert. denied,* 459 U.S. 846, 103 S.Ct. 102, 74 L.Ed.2d 91 (1982); *Camera,* 658 F.2d 80; *Walker v. Garrington,* 521 F.Supp. 1313 (M.D.Tenn.1981). Other courts, however, have either explicitly or implicitly read *Cuyler* to mean that a Sixth Amendment claim requires no more than a demonstration of an actual conflict of interest, as distinguished from a potential conflict, in trial counsel's simultaneous representation of multiple defendants in the same criminal prosecution. *E.g., Baty,* 661 F.2d 391 ("the standard imposed by the Supreme Court in *Cuyler* is met by proof of an actual conflict of interest"); *Turnquest v. Wainwright,* 651 F.2d 331 (5th Cir.1981) (defendant denied effective assistance of counsel because trial counsel had an actual conflict of interest which arose when a witness to aggravated robbery would have contradicted government testimony about defendant if he had been called to testify but would also have impaired codefendant's alibi defense); *People v. Dooley,* 21 Cal.App.3d 91, 169 Cal.Rptr. 76 (1980) (under *Cuyler* proof of actual conflict of interest mandates reversal; although court found no actual conflict,

it reversed conviction on basis of trial court's denial of motion for separate counsel due to potential conflict created by joint representation); *Commonwealth v. Michel,* 381 Mass. 447, 409 N.E.2d 1293 (1980) (defendant denied effective assistance of counsel because lawyer's joint representation of codefendants resulted in an actual conflict of interest); *see also* Note, *Conflict of Interest in the Representation of Multiple Criminal Defendants: Clarifying Cuyler v. Sullivan,* 70 Geo.L.J. 1527 (1982). I agree with those cases which interpret the *Cuyler* opinion as requiring no more than a demonstration by the defendant that there existed an actual conflict of interest in trial counsel's joint representation of multiple defendants in the same criminal prosecution.

Three reasons support the conclusion that the Supreme Court did not intend to require proof of adverse effect as a necessary component of a claim of ineffective assistance of counsel based on an actual conflict of interest. First, the Supreme Court in *Cuyler* discussed with approval its earlier holding in *Glasser v. United States,* 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942), that a conflict of interest from dual representation of joint defendants was sufficient in itself to demonstrate a denial of the right of effective assistance of counsel. As *Cuyler* points out, the right to effective assistance of counsel is too fundamental to permit a court " 'to indulge in nice calculations as to the amount of prejudice' attributable to the conflict." *Cuyler,* 446 U.S. at 349, 100 S.Ct. at 1718, quoting *Glasser,* 315 U.S. at 76, 62 S.Ct. at 467. This fact led the Court to conclude that "until a defendant shows that his counsel actively represented conflicting interests, he has not established the constitutional predicate for his claim of ineffective assistance." *Cuyler,* 446 U.S. at 350, 100 S.Ct. at 1719.

Second, although *Cuyler* held that a defendant need not demonstrate prejudice, nowhere in the opinion is it explained how a showing of adverse effect differs, if at all, from a showing of prejudice. The Court's recent remarks in *Strickland v. Washington,* — U.S. —, —, 104 S.Ct. 2052,

2067, 80 L.Ed.2d 674 (1984), which involved an ineffective assistance of counsel claim not involving a conflict of interest, add further support to the argument that there is no real distinction between prejudice and adverse effect. There the Court stated:

> In *Cuyler v. Sullivan,* 446 U.S., at 345–350, 100 S.Ct., at 1716–1719, the Court held that prejudice is presumed when counsel is burdened by an actual conflict of interest. In those circumstances, counsel breaches the duty of loyalty, perhaps the most basic of counsel's duties. Moreover, it is difficult to measure the precise effect on the defense of representation corrupted by conflicting interests. Given the obligation of counsel to avoid conflicts of interest and the ability of trial courts to make early inquiry in certain situations likely to give rise to conflicts, *see, e.g.,* Fed.Rule Crim.Proc. 44(c), it is reasonable for the criminal justice system to maintain a fairly rigid rule of presumed prejudice for conflicts of interest. Even so, the rule is not quite the per se rule of prejudice that exists for [other] Sixth Amendment claims .... Prejudice is presumed only if the defendant demonstrates that counsel "actively represented conflicting interests" and "that an actual conflict of interest adversely affected his lawyer's performance."

I fail to see how a court can presume prejudice when counsel operates under an actual conflict of interest, and yet simultaneously require a defendant to demonstrate that the actual conflict adversely affected trial counsel's performance.

Third, a standard of review that requires a separate showing of adverse effect presents severe proof problems for the defendant and would be contrary to the reasoning of *Holloway v. Arkansas,* 435 U.S. 475, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978). In *Holloway* the Court held that a trial court's decision denying defense counsel's pretrial motions for appointment of separate counsel due to a conflict of interest deprived the defendants of the right to effective assistance of counsel, thereby requiring automatic reversal of their conviction. *Holloway* emphasizes the futility of

attempting to determine the impact of the conflict on the attorney's representation, noting that such an inquiry would require "unguided speculation" on "what the advocate finds himself compelled to *refrain* from doing." 435 U.S. at 490–91, 98 S.Ct. at 1181–82 (emphasis in original). "Although the court in *Holloway* was considering whether to require proof of prejudice from a conflict, not whether to require adverse impact on counsel's representation, the reasoning is equally applicable to either situation." *Baty*, 661 F.2d at 396–97.

In the absence of a definitive decision on the issue by the United States Supreme Court, I would read *Cuyler* to mean that the essential and only predicate for a claim of ineffective assistance of counsel in the instant case is that a defendant show that there existed an actual conflict of interest in trial counsel's joint representation of multiple defendants in the same criminal proceeding. This standard is not only consistent with *Glasser* and *Holloway*, both of which provide the doctrinal underpinning for *Cuyler*, but also is in accord with our decision in *People v. Castro*, 657 P.2d 932 (Colo.1983). In *Castro*, we held that the defendant was denied effective assistance of counsel because his court-appointed lawyer was simultaneously representing the district attorney in a legal challenge to an elector's recall petition and also in a criminal charge filed against the district attorney for overspending his budget. Instead of requiring a demonstration that the conflict adversely affected the lawyer's representation, we presumed such adverse effect when we stated that "[a] lawyer representing such conflicting interests cannot avoid being adversely affected at various stages of the criminal prosecution of an accused." 657 P.2d at 944–45.

Because an actual conflict of interest existed with respect to trial counsel's simultaneous representation of Herbert and Ann Armstrong in the same criminal prosecution, both defendants were denied their constitutional right to effective assistance of counsel. I therefore concur in the judg-ment reversing the convictions and remanding for a new trial.

I am authorized to say that Justice NEIGHBORS joins in this special concurrence.