STATE of Utah, Plaintiff and Appellee,

v.

Thomas W. SCHNOOR, Defendant and Appellant.

No. 900330–CA.

Court of Appeals of Utah.

Jan. 7, 1993.

---

Jan Graham, State Atty. Gen., Kris C. Leonard (argued), Asst. Atty. Gen., R. Paul Van Dam, Salt Lake City, for plaintiff and appellee.

Joan C. Watt, Robert L. Steele, Ronald S. Fujino (argued), Salt Lake Legal Defender Ass'n, Salt Lake City, for defendant and appellant.

Before GARFF, GREENWOOD and JACKSON, JJ.

## OPINION

GARFF, Judge:

Appellant, Thomas W. Schnoor, appeals from a conviction of forgery in violation of Utah Code Ann. § 76–6–501 (1990). We affirm.

On February 21, 1990, Schnoor was charged with forgery. During the preliminary hearing, held March 29, 1990, sixteen year old B.L. testified for the State. Schnoor's counsel pointed out that B.L. was also a suspect in the forgery. Thus he should not be required to testify and possibly incriminate himself. The prosecutor, who did not later represent the State at the evidentiary hearing, then committed not to file charges against B.L. The court noted that the proper way to grant immunity was via a formal written document signed by the county attorney. Despite the court's statement that it would "hold the County Attorney to it," the prosecutor never executed a written statement of immunity.

Trial was held May 1 and 2, 1990. B.L. testified as follows: He knew Schnoor because Schnoor was romantically involved with his mother. Schnoor offered B.L. fifty dollars for cashing a paycheck from Huish Detergents made out to Robert B. Saupe. Schnoor told B.L. he could not tell anybody what he was going to do. Schnoor first drove B.L. and his twin sister to Mike's Pawn Shop, owned by Jack Lords. Schnoor instructed B.L. to memorize the name on the check and to cash it. While at the pawn shop, Schnoor repurchased his television set and took it to his car while B.L. attempted to cash the check at a different counter. When Lords required an endorsement on the check, B.L., who has a learning disorder, misspelled Saupe's name. Lords refused to cash the check.

Schnoor drove B.L. and his sister to their apartment. While there, Schnoor made two telephone calls, each time asking whether the establishment on the other end cashed checks. Schnoor ordered B.L.'s twin sister to get him some scissors so he could cut off the end of the check that bore the misspelled name.

Schnoor drove B.L. and his sister to Cash–A–Check, stopping across the street to let B.L. out. Schnoor gave B.L. the check, told him what to do, and admonished him not to mention Schnoor's name, his description, or where he was parked, in the event there were a problem. Because B.L. did not have the payee's identification, the manager required him to fill out an information sheet. B.L. neglected to fill in most of the form and again misspelled the payee's name. Becoming suspicious, the manager went to the back room, telephoned Huish Detergents for verification, spoke

with Robert Saupe, discovered Saupe had reported the check missing, and then the manager called the police. The police arrived minutes later. Schnoor drove away when the police arrived. The police arrested B.L.

B.L.'s twin sister corroborated her brother's testimony concerning Schnoor's instructions to B.L. prior to each attempt. She also corroborated B.L.'s story about the scissors.

She admitted on cross-examination that she had originally told defense counsel that B.L. found the check at Huish Detergents, while Schnoor was there to pick up his check.

During cross-examination, B.L. reported he was not granted immunity, he was not testifying because he had received immunity, and he had not been promised that the State would not press charges against him if he testified against Schnoor. He further testified he did not know why charges had not been pursued against him, and that he was not told that if he testified against Schnoor, he would not go to detention or to jail.

Also during cross-examination, an unrecorded bench conference was held.

Schnoor's testimony contradicted that of B.L. Schnoor testified that it was B.L. who obtained the check and who asked Schnoor to drive him to a place where he could cash it. On cross-examination, the prosecutor asked Schnoor whether he felt Lords, the owner of Mike's Pawn Shop, was telling the truth, confused, or mistaken.

The court instructed the jurors that they were not to concern themselves with the status of any other person or defendant named in the case. Defense counsel objected to this instruction. After another unrecorded bench conference concerning the instruction, the court pointed out to the jury that they could properly consider the credibility of both B.L. and his sister.

During closing argument, the prosecutor told the jurors they should protect B.L., that the prosecutor believed this case was important, that he believed Schnoor was guilty, that B.L.'s trial would be for another day, that B.L. had much to lose by testifying, that B.L. incriminated himself, and that the jury should not let B.L. down.

Schnoor's counsel did not object to any part of the prosecutor's closing argument. The jury found Schnoor guilty as charged. He was sentenced to an indeterminate term of one to fifteen years.

Schnoor appeals claiming the court committed reversible error in admitting the testimony regarding B.L.'s immunity status. He also claims the court denied his right to a fair trial because of the prosecutor's comments during closing arguments regarding immunity, the need to protect B.L., and his personal opinion as to the importance of the case. Schnoor claims he was also denied his right to a fair trial because the prosecution asked Schnoor to speculate as to whether the owner of Mike's Pawn Shop was telling the truth, confused, or mistaken.

## FALSE TESTIMONY

Schnoor claims the court erred in convicting him because of B.L.'s testimony regarding his immunity status.

■ A state may not knowingly use false evidence to obtain a conviction, even where the false evidence goes only to the credibility of the witness. *Napue v. Illinois*, 360 U.S. 264, 269, 79 S.Ct. 1173, 1177, 3 L.Ed.2d 1217 (1959); *Giglio v. United States*, 405 U.S. 150, 153, 92 S.Ct. 763, 766, 31 L.Ed.2d 104 (1972). "The jury's estimate of the truthfulness and reliability of a given witness may well be determinative of guilt or innocence, and it is upon such subtle factors as the possible interest of the witness in testifying falsely that a defendant's life or liberty may depend." *Napue*, 360 U.S. at 269, 79 S.Ct. at 1177.

■ If we determine that the evidence was false, we then apply the two-part test articulated in *State v. Humphrey*, 793 P.2d 918 (Utah App.1990). This test asks (1) whether "the remarks call to the attention of the jurors matters which they could not properly consider in determining their verdict," and (2) whether the error was so "substantial and prejudicial such that there

is a reasonable likelihood that without the error the result would have been more favorable for the defendant." *Id.* at 925.

■ Here, B.L.'s immunity status was based on the prosecutor's commitment that he would not file future charges against B.L., and the court's statement that it would hold the prosecutor to his commitment. The record reveals no exchange of testimony for immunity. In fact, B.L.'s testimony was already available to the State in the form of his earlier confession to the police. Moreover, a fair interpretation of the trial transcript could be that B.L., who has a learning disorder, was confused rather than dishonest.

Moreover, B.L.'s statements on cross-examination did not conflict with what took place at the preliminary hearing: He reported he was not testifying because he had received immunity. He testified he was not promised that the State would not press charges against him if he testified against Schnoor. He testified he did not know why charges had not been pursued against him. He testified he was not told that if he testified against Schnoor, he would not go to detention or to jail.

In short, the fact the prosecutor had committed not to file charges against B.L. would not affect the "jury's estimate of the truthfulness and reliability" of B.L. *Napue*, 360 U.S. at 269, 79 S.Ct. at 1177. Likewise, it would in no way "be determinative of guilt or innocence" of Schnoor. *Id.* Because we determine that B.L.'s testimony was not false, we need not apply the two-part *Humphrey* test.

## STATE CONSTITUTIONAL CLAIMS

Schnoor also claims his state constitutional rights were violated. However, because Schnoor (1) did not preserve this issue at trial; (2) offers no separate analysis; and (3) claims no broader protection, we decline to consider this claim. *State v. Jensen*, 818 P.2d 551, 552 n. 2 (Utah 1991); *State v. Earl*, 716 P.2d 803, 805–06 (Utah 1986).

## INEFFECTIVE ASSISTANCE OF COUNSEL

Schnoor claims for the first time on appeal that he was denied effective assistance of counsel.

■ Schnoor did not raise this issue at trial. Ordinarily, an ineffective assistance of counsel claim cannot be raised on appeal because the trial record is insufficient to allow the claim to be determined. *State v. Humphries*, 818 P.2d 1027, 1029 (Utah 1991). However, an appellant may raise such a claim if the trial record is adequate to permit determination of the issue and there is new counsel on appeal. *Id.; State v. Johnson*, 823 P.2d 484, 487 (Utah App. 1991). Because the trial record is adequate and Schnoor is represented by new counsel, we reach the merits of the claim.

We have no order to review. Thus, we must determine whether counsel's performance was deficient and, if so, whether the deficient performance prejudiced Schnoor under the test set forth in *Strickland v. Washington*, 466 U.S. 668, 687–88, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). *Accord State v. Frame*, 723 P.2d 401, 405 (Utah 1986) (per curiam).

To prevail on a claim of ineffective assistance of counsel, Schnoor must show that (1) "counsel's representation falls below an objective standard of reasonableness,"; and (2) counsel's representation had a prejudicial effect on the outcome. *Strickland*, 466 U.S. at 687–88, 104 S.Ct. at 2064; *Frame*, 723 P.2d at 405.

■ Schnoor claims the following acts and omissions of his counsel fell below an objective standard of reasonableness and prejudiced the outcome of his trial: (1) failure to insist that the bench conference be on the record; (2) failure to impeach B.L. via the preliminary hearing transcript; (3) failure to proffer evidence regarding B.L.'s immunity status; (4) failure to object to the prosecutor's closing argument; and (5) failure to record counsel's objections and arguments regarding instruction number seven. In sum, all of the alleged acts and omissions relate to a presumption that `B.L.

received immunity in exchange for his testimony.

Here, defense counsel vigorously cross-examined B.L. regarding his immunity status. Moreover, because we have already determined that B.L. did not receive immunity in exchange for his testimony and thus, B.L.'s testimony on cross-examination did not conflict with the events that transpired at the preliminary hearing, we find no fault in defense counsel's strategy regarding this issue. We thus find no merit in Schnoor's claim of ineffective assistance of counsel.

We decline to consider Schnoor's other claims, including those of prosecutorial misconduct and cumulative effect of errors, because they were not preserved for appeal, and/or because they are without merit. *See Low v. Bonacci,* 788 P.2d 512, 513 (Utah 1990). Affirmed.

GREENWOOD and JACKSON, JJ., concur.