STATE of Utah, Plaintiff and Appellee,

v.

John E. HUMPHREY, Defendant and Appellant.

No. 890333–CA.

Court of Appeals of Utah.

May 23, 1990.

ture by both statute and case law." 1978 Utah

L. Rev. 399 (footnotes omitted).

Connie L. Mower, Salt Lake City, for defendant and appellant.

R. Paul Van Dam and Dan R. Larsen, Salt Lake City, for plaintiff and appellee.

Before BILLINGS, GREENWOOD and ORME, JJ.

## OPINION

GREENWOOD, Judge:

Defendant John E. Humphrey challenges his jury conviction of aggravated robbery, a first degree felony in violation of Utah Code Ann. § 76–6–302 (1978). We affirm the conviction, but remand for the purpose of correcting the sentence.

## FACTS

At approximately 3:30 p.m., on October 21, 1987, a bearded man held Karakine Karmelian, the owner of a Salt Lake City jewelry store, and Stephen Church, a security guard, at gunpoint while he robbed the store of jewelry, diamonds, and cash, worth approximately $40,000. The robber pulled a sawed-off shotgun from a cloth bag and directed Karmelian to put the contents of the safe and display cases into the bag. The robber then directed Church to handcuff himself to Karmelian and toss him the key. Before leaving, the robber warned the two men not to try to follow him because "another guy" with a gun was waiting outside.

Later that day, Karmelian was brought to the police station where Detective Lomax showed him a set of photographs in an attempt to identify the robber. The set did not include defendant's picture. Karmelian was unable to identify the robber from these photographs.

Based on information provided by Britt Martindale, the police secured a warrant and, on November 4, 1987, arrested defendant, Charles Webb, and Webb's girlfriend, Carolyn Gregersen, at Webb and Gregersen's apartment. The police seized, in part, a diamond watch from Gregersen's purse, a ring from her jewelry box, and a shotgun from the bedroom in which Webb had been found. At the time of the arrest, defendant was living in the Martindale home, located several blocks away from Webb and Gregersen's apartment.

Following the arrest, Karmelian was again brought to the police station. Detective Lomax showed him another set of photographs, which included both defendant's and Webb's photographs along with five or six others. Karmelian selected one photograph, indicating that it might possibly be the robber. At the time, Detective Lomax was not sure which photograph was defendant and which was Webb. The set of photographs was destroyed sometime before trial.

In mid-November, the police found an abandoned stolen car in a parking lot that Russell Martindale, Britt's husband, told police was used in the robbery. A hat and coat found inside the car matched Karmelian and Church's description of the clothing worn by the robber.

At their preliminary hearing in late November 1987, defendant and Webb were represented separately by two attorneys from the Salt Lake Legal Defenders Association (SLLDA). When Webb's appointed counsel subsequently withdrew from representing him, Webb privately retained attorney Ray Stoddard to represent both him and Gregersen. Appointed counsel, Lisa Remal, continued to represent defendant.

In January 1988, Remal filed a motion, which Stoddard joined in on behalf of Webb, to sever defendant's trial from Gregersen's. The motion was granted.

In March 1988, Stoddard filed motions to withdraw as Webb's counsel and to sever Webb's trial from defendant's on grounds that substantially more evidence would be presented against defendant than Webb, thereby prejudicing the jury to find Webb guilty by association. Stoddard's motion to withdraw as Webb's counsel was granted, and another attorney from SLLDA, Brooke Wells, was appointed to represent Webb. Stoddard continued to represent Gregersen. Webb's severance motion was not pursued by Wells.

In April 1988, defendant filed a handwritten pro se motion, captioned "Motion for Conflict of Interest and Trial Separation." The motion asserted, in part, that Webb[1] would be deprived of a fair trial if the robbery victims were allowed to identify defendant at trial since, according to defendant, their pretrial identification of him was unconstitutional. In May 1987, defendant filed another handwritten pro se motion, captioned "Motion to Suppress Evidence and Conflict of Interest," which roughly claimed the same conflict of interest. Defendant also joined a motion in limine made by Webb to exclude evidence of any prior bad acts of the defendants. The motion was granted and renewed as a reminder at the start of trial. Just prior to trial, defendant filed a handwritten affidavit to disqualify Judge Sawaya from the case. Judge Sawaya referred the recusal matter to Judge Wilkinson, who denied the motion.

A joint trial for defendant and Webb was held in June 1988. At trial, Karmelian and Church described the robbery and identified defendant as the robber. Also testifying for the State were Britt Martindale and Russell Martindale, who was granted immunity for car theft in return for his testimony.

Britt testified that on October 21, 1987, at approximately 4:00 p.m., Webb backed a car, in which Gregersen was a front seat passenger, into her driveway. Webb went into the Martindale home, took a blanket off of Britt's bed, and yelled to Britt to come outside with him and hold up one side of the blanket behind the trunk of the car. Webb instructed Britt to push the trunk release button inside the car. When the trunk opened, Britt saw defendant inside the trunk. Defendant climbed out of the trunk and went directly into the bathroom of the Martindale home and shaved off his beard. Webb retrieved a canvas bag and a sawed-off shotgun from the car, and Britt put the shotgun on a shelf in her pantry. Webb and Gregersen then sorted through jewelry taken from the bag. Defendant walked back and forth between the bathroom and the kitchen while shaving, explaining "how he put the shotgun in some guy's face" and handcuffed a guard who arrived during the robbery. Webb exclaimed that "everything went great," and that "the cops didn't show up" for a while, and that he knew everything was okay when "all he saw was an old man coming over a fence." Later that day, defendant, Webb, and Russell left for Las Vegas.

At trial, Britt also identified the shotgun seized from Webb's bedroom as the shotgun that Webb pulled from the bag and she put in the pantry. She also identified the diamond watch seized from Gregersen's purse as the watch she saw Webb give Gregersen from the bag.

Russell testified that he stole the abandoned car found by police, that was used in the robbery. Webb had promised him that he would pay the rent on Russell's house if he would steal a car for him. He gave the car to Webb the day prior to the robbery. After the robbery, he travelled with defendant and Webb to Las Vegas. Webb told him that he knew someone in Las Vegas who could get rid of the items Webb and defendant had stolen. He signed a pawn slip in Las Vegas, but did not know what he was signing at the time. He travelled

---

**1.** There is no apparent reason for defendant submitting a motion in support of the alleged interests of his codefendant, Webb.

with defendant and Webb for three to four days until he parted with them in Portland, Oregon.

Defendant and Webb both claimed at trial that they had been set up by the Martindales. Webb testified that he purchased the ring and watch from Britt at her home on November 2, 1987, and gave them to Gregersen for a birthday present. He stated that during the robbery, he was in Ely, Nevada, pursuing his occupation of selling gold, silver, and diamonds. He introduced into evidence a gas station receipt from Ely, dated October 21, 1987.

Defendant testified that he came to Salt Lake City on October 17, 1987, for the first time, to visit Webb. Since Webb was out of town on business, he stayed with another friend, Russell Martindale. On October 21, 1987, the day of the robbery, he was at the Martindale home babysitting their kids. At about 4:00 p.m., Russell, Britt, and a bearded man, known to defendant as Frank, returned home with a large bundle wrapped in a quilt. Frank carried the bundle into the back bedroom. Defendant never saw any weapon or jewelry. Defendant further testified that after shaving his beard off, he left with Frank and Russell for Las Vegas, where Frank left them and Webb joined them. Russell pawned some jewelry in Las Vegas. On November 2, 1987, he saw Webb buy the diamond watch and ring from Britt.

At the end of the State's case and again after closing arguments, both defendant and Webb moved for a directed verdict on the basis that the evidence at trial was insufficient. The motions were denied. The jury found defendant and Webb guilty of aggravated robbery.

On appeal, defendant claims that (1) he was denied effective assistance of counsel because both he and Webb, his codefendant, were each represented at their joint trial by SLLDA attorneys; (2) there was insufficient evidence to support a conviction for aggravated robbery; (3) the cumu-

lative effect of the prosecutor's misconduct warranted a new trial; (4) the trial court erred in denying his motion for recusal; and (5) his due process rights were violated by the prosecution's failure to preserve photographs shown to Karmelian. Defendant also raises several additional issues in a pro se supplemental brief.

## INEFFECTIVENESS OF COUNSEL

We first address defendant's claim of ineffectiveness of counsel. Defendant concedes that the separate representation of him and codefendant Webb by two public defenders from the same office is not a per se conflict of interest. *People v. Thomas*, 186 Ill.App.3d 782, 134 Ill.Dec. 535, 544, 542 N.E.2d 881, 890 (1989); *State v. Bell*, 90 N.J. 163, 447 A.2d 525, 529 (1982); *Cf. Holloway v. Arkansas*, 435 U.S. 475, 482, 98 S.Ct. 1173, 1177, 55 L.Ed.2d 426 (1978) (a single attorney representing codefendants is not per se violative of constitutional guarantee of effective assistance of counsel). He argues, however, that under the circumstances in this case, the representation of him and Webb by two public defenders from the same office constituted a conflict of interest that denied him effective assistance of counsel guaranteed by the sixth amendment. Webb made this same claim in his appeal to this court. We recently affirmed his conviction in *State v. Webb*, 790 P.2d 65 (Ct.App.1990), where we applied the United States Supreme Court's two-step approach to joint representation. *See Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984).[2]

In *Webb*, we determined that where codefendants are separately represented by two public defenders from the same office, and the potential conflict is brought to the attention of the trial court by counsel before or during the early stages of trial, the trial court must take adequate steps to resolve the issue. If a trial court fails to investigate such a poten-

---

**2.** In *Webb*, we assumed without deciding that for purposes of a sixth amendment analysis of a claim of ineffectiveness of counsel, two law partners or associates are considered one attor-

ney. *Id.* at 72 n. 3 (citing *Burger v. Kemp*, 483 U.S. 776, 107 S.Ct. 3114, 3120, 97 L.Ed.2d 638 (1987)); *see also Martinez v. Sullivan*, 881 F.2d 921, 930 (10th Cir.1989).

tial conflict of interest, we presume prejudice and reverse. *Id.* at 71 (citing *Holloway*, 435 U.S. at 483–87, 98 S.Ct. at 1178–80). A defendant who fails to bring a potential conflict to the attention of the trial court must show on appeal that an actual conflict of interest existed which adversely affected his or her lawyer's performance. *Id.* (citing *Cuyler v. Sullivan*, 446 U.S. 335, 343, 349–50, 100 S.Ct. 1708, 1715, 1718–19, 64 L.Ed.2d 333 (1980)).

■ Defendant argues that the following three incidents should have alerted the court to a conflict of interest, thereby obligating it to resolve the conflict: (1) Webb's pretrial motion to sever his trial from defendant's; (2) defendant's pro se motions regarding conflict of interest; and (3) Webb's motion for a new trial. In *Webb*, we disposed of all three incidents, determining that they were inadequate to raise the alleged conflict to the trial court's attention. *Id.* at 73–76. In sum, there is no evidence that the trial court knew or should have known before or at trial that the two SLLDA attorneys were representing codefendants with possible conflicting interests. *Id.* at 75.

We next turn to the actual conflict standard as articulated in *Cuyler*, 446 U.S. at 349, 100 S.Ct. at 1718. Defendant has the burden to show with some specificity that an actual conflict of interest adversely affected his representation. *Webb*, 790 P.2d at 75; *see also Cuyler*, 446 U.S. at 349–50, 100 S.Ct. at 1718–19. In *State v. Barella*, 714 P.2d 287 (Utah 1986), the Utah Supreme Court found no conflict of interest constituting ineffectiveness of counsel where legal defenders from the same office represented defendant and codefendant, since nothing in the record supported defendant's speculation that codefendant's plea to a lesser charge might have been in exchange for a promise that he would testify against defendant. The supreme court stated that "while we cannot indulge in nice calculations about the amount of prejudice which results from a conflict of interest ... neither can we create a conflict of interest out of mere conjecture as to what might have been shown." *Id.* at 289 (quot-

ing *United States v. Lugo*, 350 F.2d 858, 859 (9th Cir.1965)). In sum, hypothetical or speculative conflicts will not suffice to establish a violation. *Webb*, 790 P.2d at 75. Defendant must show that counsel actively represented conflicting interests and that an actual conflict of interest adversely affected his lawyer's performance. *Id.; see also Strickland*, 466 U.S. at 692, 104 S.Ct. at 2067.

■ In contrast to Webb's appeal, in which he fails to even attempt to demonstrate a disparity of evidence incriminating each defendant, *see Webb*, 790 P.2d at 75, defendant here contends that evidence of the shotgun seized from Webb's bedroom and of the jewelry seized from Gregersen's possession, created a conflict between himself and Webb. He also argues that this conflict adversely affected his counsel's performance, since "independent counsel" would have pursued a defense on the theory that Webb was the guilty party and that defendant was drawn into the crime through suggestive photo displays.

We disagree. Finding jewelry in Gregersen's sole possession does not create a conflict of interest between defendant and Webb because their trial was severed from Gregersen's. Finding the shotgun in Webb's bedroom also fails to create a conflict of interest between the codefendants, since Britt's testimony places both codefendants in her home with the shotgun shortly after the robbery and implicates their mutual involvement in the robbery by their statements and actions. Further, even if finding the shotgun in Webb's bedroom created a conflict of interest between defendant and Webb, we are not convinced that it adversely affected his counsel's performance. In light of Britt's testimony, there were tactical reasons underlying the pursuit of a united defense at a joint trial. *Webb*, 790 P.2d at 75–77. The codefendants gave consistent and corroborative testimony to support their claim that the Martindales were the real culprits and had set them up.

We conclude that defendant has failed to demonstrate an actual conflict of interest

which resulted in denial of effective assistance of counsel.[3]

Finally, for reasons more specifically addressed in *Webb*, because defendant contends for the first time that the right to counsel guaranteed in article I, section 12 of the Utah Constitution should be interpreted more expansively than the federal constitution, we refuse to consider his arguments in the absence of exceptional circumstances or plain error. *Id.* at 71 n. 2.

## INSUFFICIENCY OF EVIDENCE

■ Defendant next asserts that the evidence at trial was insufficient to support the jury's verdict. "In evaluating such a claim we must view the record evidence in the light most favorable to the verdict." *State v. Eldredge*, 773 P.2d 29, 38 (Utah 1989); *State v. Petree*, 659 P.2d 443, 444 (Utah 1983). When the findings of all the requisite elements of the crime can be reasonably made from the evidence and all reasonable inferences that can be drawn from it, our inquiry stops, and we sustain the verdict. *State v. Hopkins*, 782 P.2d 475, 477 (Utah 1989) (citing *State v. Gehring*, 694 P.2d 599, 600 (Utah 1984)); *State v. Gardner*, 789 P.2d 273, 285 (1989).

■ Under Utah Code Ann. § 76–6–302(1) (1978), a person commits aggravated robbery if, in the course of committing robbery, he or she "(a) Uses a firearm or a facsimile of a firearm, knife or a facsimile of a knife or a deadly weapon; or (b) Causes serious bodily injury upon another."

Defendant argues that given Karmelian and Church's questionable identification at trial and Britt's tainted testimony in light of her husband's involvement in the robbery, the remaining evidence of the gun, watch, and ring seized from Webb and Gregersen's apartment is insufficient to support defendant's conviction. Defendant concludes that the evidence instead creates the reasonable hypothesis that it was the Martindales who were involved in the robbery with Webb, not defendant.

It was the jury's duty to resolve all questions regarding the reliability of Karmelian, Church, and Britt Martindale's testimonies. *See State v. Lovato*, 702 P.2d 101, 107 (Utah 1985). The jury obviously believed their testimony. Although there may be conflicting evidence to support defendant's hypothesis that the Martindales and Webb alone were responsible for the robbery, the jury's function was to weigh the conflicting evidence and draw conclusions therefrom. *State v. Pierce*, 722 P.2d 780, 781–82 (Utah 1986). We find that the evidence and all reasonable inferences drawn from it establish the necessary elements of aggravated robbery. Britt's testi-

---

**3.** Federal Rule of Criminal Procedure 44(c) provides a procedure for protecting a defendant's sixth amendment right to effective assistance of counsel where two or more defendants have been jointly charged or are to be jointly tried, and are represented by the same counsel. The rule provides that

the court shall promptly inquire with respect to such joint representation and shall personally advise each defendant of his right to the effective assistance of counsel, including separate representation. Unless it appears that there is good cause to believe no conflict of interest is likely to arise, the court shall take such measures as may be appropriate to protect each defendant's right to counsel.

Fed.R.Crim.P. 44(c).

The notes of the advisory committee on rules state that "[u]nder rule 44(c), an inquiry is called for when the joined defendants are represented by the same attorney *and also when they are represented by attorneys 'associated in the practice of law.'*" Fed.R.Crim.P. 44 advisory committee notes, 1979 amendment (emphasis added). The particular measures to be taken in this inquiry are not set forth in the rule, but are left to the court's discretion. *Id.*

At least one state court requires an inquiry when multiple defendants are to be represented by separate public defenders from the same office. *See State v. Bell*, 90 N.J. 163, 447 A.2d 525, 530 (1982).

In order to avoid claims such as raised herein, it would be beneficial if, when codefendants are represented separately by public defenders, Utah trial courts utilized a similar procedure, by obtaining an on record consent to the representation. This practice would clarify that a defendant has considered and waived possible conflicts of interests. Given the "conflicts of interests [that] could arise when office associates represent co-defendants," *Barella*, 714 P.2d at 289, there may be benefits in having defendant's consent a matter of record. Such a practice should not, however, preclude the obligation of a trial court to sever joint representation if an actual conflict were to arise.

mony of defendant's actions and statements at her house shortly after the robbery strongly implicate defendant as the robber. Although Karmelian and the security guard gave slightly varying descriptions of the robber, at trial both similarly described the robber's beard, hat, jacket, and dark glasses, and both positively identified the defendant as the robber. Finally, the hat and coat found inside the stolen car used in the robbery matched the description of the clothing worn by the robber. Viewing all the evidence in the light most favorable to the jury's verdict, we conclude there was sufficient evidence for the jury to reasonably find that defendant committed the crime of aggravated robbery.

## PROSECUTORIAL MISCONDUCT

We next address defendant's claim that the cumulative effect of prosecutorial misconduct warrants a new trial.

■ The Utah Supreme Court has established a two-part test to determine whether a prosecutor's remarks warrant reversal: (1) did the remarks call to the attention of the jurors matters which they could not properly consider in determining their verdict, and (2) was the error substantial and prejudicial such that there is a reasonable likelihood that without the error the result would have been more favorable for the defendant. *State v. Hopkins,* 782 P.2d 475, 478 (Utah 1989); *Gardner,* 789 P.2d at 287; *State v. Tillman,* 750 P.2d 546, 555 (Utah 1987).

■ Defendant first argues that the prosecutor violated the trial court's pretrial order to refrain from referring to the codefendants' prior bad acts when, during both cross-examination of defendant and closing remarks, she inappropriately referred to a police stop of the codefendants outside a pawn shop in Oregon. However, because defendant failed to object or ask for a curative jury instruction at trial to the prosecutor's references and failed to object to the cross-examination, he waived his argument on these alleged violations. *See State v. Hales,* 652 P.2d 1290, 1292 (Utah 1982).

■ Defendant next contends that the prosecutor inappropriately elicited testimony from Detective Lomax regarding a phone call he received from another detective. Lomax testified that the detective informed him of a couple of rings in the jewelry box that the detective had been told by Gregersen were given to her by Webb or defendant. Following objection by Webb, which was later joined by defendant, the trial court found the statement prejudicial, ordered it stricken, and admonished the jury to disregard the answer. The trial court later denied Webb's motion for a new trial, finding that the comment did not warrant a curative instruction. Trial courts have the discretion to determine whether a curative instruction is required in a particular case. *State v. Tucker,* 709 P.2d 313, 316 (Utah 1985). We find the trial court's immediate admonition that the statement be stricken and that no further reference be made to the statement, rendered harmless the otherwise improper testimony. *See State v. Tucker,* 727 P.2d 185, 187–188 (Utah 1986).

■ Finally, defendant erroneously contends that the prosecutor's statement in closing argument that defendant refused to participate in a lineup was prejudicial and constituted misconduct. The prosecutor was simply responding to defendant's point in closing argument that a lineup was not conducted. Since defendant "opened the door," such a response was clearly not misconduct.

Since none of the alleged prosecutorial misconduct constitutes error, the concept of cumulative error does not apply in this case. *State v. Eldredge,* 773 P.2d 29, 38 (1989); *Bundy v. Deland,* 763 P.2d 803, 806 (Utah 1988).

## MOTION TO RECUSE

■ Defendant next contends that the trial court erred in denying his handwritten pro se affidavit to disqualify Judge Sawaya. In *State v. Neeley,* 748 P.2d 1091 (Utah 1988), *cert. denied,* 487 U.S. 1220, 108 S.Ct. 2876, 101 L.Ed.2d 911 (1988), the supreme court stated that

while we recommend the practice that a judge recuse himself where there is a colorable claim of bias or prejudice, absent a showing of actual bias or an abuse of discretion, failure to do so does not constitute reversible error as long as the requirements of section 77–35–29 are met.

*Id.* at 1094–95.

Judge Sawaya followed the procedure mandated by Utah Code Ann. § 77–35–29(c)–(d) (Supp.1989), by ordering a certified copy of the affidavit be sent to Judge Wilkinson, who, after review, found it to be legally insufficient.

Further, defendant fails to show even a colorable claim of bias or prejudice, let alone actual bias. The affidavit alleges that the trial judge refused to answer numerous handwritten letters defendant filed with the court, his motions to disqualify the judge, and his request to assist in his own defense. These three allegations are without merit. First, although Judge Sawaya did not respond directly to each of defendant's confusing letters, he sufficiently addressed defendant's apparent primary concern about suppression of identification at the preliminary hearing. Second, as we previously stated, the judge adequately addressed defendant's pro se disqualification motions. Third, the judge's instruction to defendant that he would have to address the court through his attorney does not constitute a denial of defendant's assistance in his own defense.

## DESTRUCTION OF PHOTO SPREAD

■ We next address defendant's claim that his due process and fair trial rights were violated because the police did not preserve the photo array shown to Karmelian. Due process is denied where "evidence material to the guilt or innocence of the defendant in a criminal case" is deliberately suppressed or destroyed. *State v. Stewart*, 544 P.2d 477, 479 (Utah 1975). "The materiality required to reverse a criminal conviction for suppression or destruction of evidence as a denial of due process is more than evidentiary materiality." *State v. Nebeker*, 657 P.2d 1359, 1363

(Utah 1983). The evidence must be material in the constitutional sense. *Id.*

> Constitutional materiality requires that there be a showing that the suppressed or destroyed evidence is vital to the issues of whether the defendant is guilty of the charge and whether there is a fundamental unfairness that requires the Court to set aside the defendant's conviction.

*State v. Lovato*, 702 P.2d 101, 106 (Utah 1985).

Defendant argues that the evidence is material since if Karmelian actually identified Webb rather than defendant as the robber, such evidence would exculpate defendant. We agree that the photo array should have been preserved for potential exculpatory purposes. However, defendant was also positively identified in court by Church, who viewed the robber in the store at close range and who was not shown any photos of defendant prior to trial. Since the photos were not the sole source for a finding of defendant's guilt, we find that the destroyed photos lacked materiality in the constitutional sense.

## ISSUES RAISED IN DEFENDANT'S PRO SE SUPPLEMENTAL BRIEF

Following careful consideration of the arguments raised in defendant's pro se supplemental brief, we conclude that they are meritless and that discussion of them is unnecessary. *See State v. Carter*, 776 P.2d 886, 888–89 (Utah 1989).

## SENTENCE

■ Finally, we address an issue not raised by defendant, but by the State, "in adherence to its duty to promote justice." *State v. Bartley*, 784 P.2d 1231, 1237 (Utah Ct.App.1989). Based on the Utah Supreme Court's interpretation in *State v. Willett*, 694 P.2d 601 (Utah 1984), of the firearm enhancement statute as providing for a maximum enhancement term of five years, the State concedes that the trial court abused its discretion by imposing a six-year firearm enhancement term. As in *Webb*, 790 P.2d at 85–87, we direct the trial court

upon remand to reduce the enhancement sentence for use of a firearm in the commission of aggravated robbery from six years to a total of five years.

Affirmed, with instructions to correct the sentence.

BILLINGS and ORME, JJ., concur.