2024 UT App 79

# THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
LISA YVONNE OREILLY,
Appellant.

Opinion
No. 20230104-CA
Filed May 23, 2024

Sixth District Court, Panguitch Department
The Honorable Mandy Larsen
No. 181600010

Nicolas C. Wilde and Trevor J. Lee,
Attorneys for Appellant

Barry Huntington and Jerry Jaeger,
Attorneys for Appellee

JUDGE GREGORY K. ORME authored this Opinion, in which
JUDGES DAVID N. MORTENSEN and AMY J. OLIVER concurred.

ORME, Judge:

¶1     Lisa Yvonne Oreilly appeals her convictions for possession of methamphetamine, possession of marijuana, and possession of drug paraphernalia. Oreilly argues she was denied her constitutional right to counsel and, thus, is entitled to a new trial. Orielly's challenge is based on the assertion that her trial counsel labored under an actual conflict of interest because counsel represented both her and her codefendant, Michael Thompson. We agree with Oreilly that because of the joint representation she is not required to show prejudice under the traditional ineffective assistance analysis, but we deny the requested relief because

Oreilly has not carried her burden of showing the existence of an actual conflict of interest.

## BACKGROUND[1]

¶2    Acting on a tip, a Utah Highway Patrol trooper and sergeant located a vehicle parked in front of a rest stop bathroom in February 2018. The vehicle was empty and, according to the sergeant, "parked crooked, unusual." Less than a minute after the officers arrived, Oreilly and Thompson emerged from the bathroom. Both officers described Oreilly and Thompson as nervous and seemingly under the influence of drugs.

¶3    The officers approached and made contact with Oreilly and Thompson. Thompson was arrested when a driver license check revealed two outstanding arrest warrants. After Oreilly said she did not have a valid driver license and the officers determined neither Oreilly nor Thompson owned the vehicle, the decision was made to have the vehicle towed.

¶4    At some point during the encounter, a trained K-9 handler with the Garfield County Sheriff's Office arrived at the scene and walked his dog around the vehicle. The dog alerted to the presence of drugs. The officers then conducted a physical search of the vehicle and found marijuana, marijuana grinders, a marijuana pipe, a baggie containing methamphetamine, a clear container containing methamphetamine, and syringes containing methamphetamine. All of the items were in areas accessible to both the driver and the passenger.

---

1. "On appeal, we recite the facts from the record in the light most favorable to the jury's verdict and present conflicting evidence only as necessary to understand issues raised on appeal." *State v. Daniels*, 2002 UT 2, ¶ 2, 40 P.3d 611.

¶5     Thompson told the trooper that all the seized evidence belonged to him. Oreilly told the sergeant and the trooper that the pipe and a grinder belonged to her. She also informed the trooper that the substance in the syringes was methamphetamine, not heroin, stating, "I can guarantee you that whatever you did find, it ain't heroin. I could guarantee you that it's probably methamphetamine." The trooper observed and took pictures of needle marks and bruising on Oreilly's arms. The trooper later reviewed a video recorded while Oreilly and Thompson were seated in his patrol car. The video showed Oreilly acknowledging to Thompson that she knew used syringes were present in the vehicle and stating that she had disposed of a syringe in the rest stop bathroom. The video also showed Oreilly and Thompson discussing who should take responsibility for the seized evidence, with Oreilly stating, "So, I don't know what to do and this is gonna sound really shitty but maybe you should take the blame and then I'll bail you out babe." Later in the recording, Oreilly said to Thompson, "If it goes all on me, then I can't get you out. . . . Is it selfish of me to make you take all the rap? Was that selfish of me?"

¶6     Oreilly was subsequently charged with possession of methamphetamine, possession of marijuana, and possession of drug paraphernalia. Thompson was charged in a separate information with the same crimes. At their initial appearance, Oreilly and Thompson were provided with a copy of the applicable information and advised of their right to counsel. Both defendants asked the court to continue the initial appearances until they could hire an attorney. After noting that Oreilly's case and Thompson's case were assigned to two different judges, the district court stated, "I think just pretrial, we could probably keep the cases together."

¶7     In June 2018, an attorney appeared before the district court on behalf of both Oreilly and Thompson. When the court asked whether the two matters should be heard together, the attorney

responded, "Yeah. It's the same facts and we can consolidate them[.]" The cases were then set for a preliminary hearing, but Oreilly later waived her right to a preliminary hearing. The attorney represented Oreilly at her arraignment and entered a plea of not guilty on her behalf.

¶8      The attorney subsequently attended several hearings on various matters involving Oreilly's case. Nothing in the transcripts of these hearings indicates that the district court ever inquired into the propriety of the attorney's joint representation of Oreilly and Thompson. Nor does the record show that the attorney or Oreilly raised any concerns with the court stemming from the attorney's joint representation. In fact, at a pretrial conference in January 2020, it was the attorney who asked the court to "consolidate the two cases and try them together." In May 2020, the attorney again told the district court he had "no objection to consolidating the cases and just having one jury and one trial for both cases." In June 2021, the attorney indicated he and his clients were "comfortable" with a joint trial. Oreilly was present for this hearing. She did not express any concerns with the attorney's joint representation, and the district court did not inquire into the possibility of a conflict of interest.

¶9      Oreilly and Thompson were tried together in August 2022. Neither defendant was incarcerated at the time of trial and neither appeared for the one-day trial. The State presented, inter alia, the testimony of the trooper and the sergeant describing their encounter with Oreilly and Thompson, as summarized above. The attorney for Oreilly and Thompson did not call any witnesses for the defense, but during closing argument, he highlighted that the vehicle in which the drugs and paraphernalia were found was not owned by Oreilly or Thompson, implying the items could belong to the owner. The attorney also questioned whether the officers acted properly in video-recording Oreilly and Thompson while they sat in the trooper's patrol car.

¶10    The jury found Oreilly and Thompson guilty of all charged crimes, and the court later imposed sentences for each. Oreilly then filed this timely appeal.

ISSUE AND STANDARD OF REVIEW

¶11    Oreilly seeks reversal of her convictions based on a claim of ineffective assistance of counsel. The Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to effective assistance of counsel.[2] *See Strickland v. Washington*, 466 U.S. 668, 684 (1984). "When a claim of ineffective assistance of counsel is raised for the first time on appeal, there is no lower court ruling to review and we must decide whether the defendant was deprived of the effective assistance of counsel as a matter of law." *State v. Holsomback*, 2022 UT App 72, ¶ 19, 513 P.3d 82 (quotation simplified).

¶12    Typically, a defendant challenging her conviction based on ineffective assistance of counsel must demonstrate that counsel's performance was deficient and that she was prejudiced by the deficient performance. *See State v. Centeno*, 2023 UT 22, ¶ 64, 537 P.3d 232. Here, however, Oreilly's ineffective assistance claim is based on allegations that her attorney's joint representation of her and her codefendant gave rise to a conflict of interest. Absent special circumstances not present in this matter, *see Holloway v. Arkansas*, 435 U.S. 475, 484–85 (1978); *State v. Newman*, 928 P.2d 1040, 1044 (Utah Ct. App. 1996), an appellant asserting an ineffective assistance claim based on an actual conflict of interest

---

2. Oreilly also raises an ineffective assistance of counsel claim under Article I, Section 12 of the Utah Constitution. Because she does not differentiate between her federal and state claims, we follow the lead of the Utah Supreme Court and "consider only the claim based on the federal Constitution." *State v. Templin*, 805 P.2d 182, 185 (Utah 1990).

arising from joint representation can prevail without demonstrating prejudice if she can show the alleged conflict actually existed and that it adversely affected her attorney's performance, *Newman*, 928 P.2d at 1044.

¶13 "To establish an actual conflict of interest, [an appellant] must show a conflict that affected counsel's performance—as opposed to a mere theoretical division of loyalties." *State v. Cecala*, 2021 UT App 141, ¶ 37, 502 P.3d 790 (quotation simplified). A conflict arising from joint representation affects counsel's performance if "arguments or actions allegedly omitted would likely have been made by other counsel" and there was no "tactical reason (other than the asserted conflict) for the omission." *State v. Webb*, 790 P.2d 65, 76 (Utah Ct. App. 1990).

## ANALYSIS

### I. A Preliminary Matter

¶14 As an initial matter, the State argues Oreilly cannot proceed under the theory that an actual conflict existed because she did not timely object to the attorney's joint representation. This argument is based on a misreading of both United States Supreme Court and Utah precedent.

¶15 In *Holloway v. Arkansas*, 435 U.S. 475 (1978), the United States Supreme Court addressed a claim that trial counsel was constitutionally ineffective because he simultaneously represented three codefendants. *Id.* at 476–77. Counsel repeatedly alerted the trial court to a "probable risk of a conflict of interests" arising from his joint representation. *Id.* at 477–80, 484. The trial court, however, failed to appoint new counsel or inquire into the nature and scope of the alleged conflict. *Id.* at 484. Under these circumstances, the Supreme Court held that the defendant was entitled to a presumption the conflict resulted in ineffective

assistance of counsel and the "automatic" reversal of his conviction. *Id.* at 488. Two years later, in *Cuyler v. Sullivan*, 446 U.S. 335 (1980), the Supreme Court refused to extend its automatic reversal ruling to a situation where the alleged conflict arising from joint representation was *not* brought to the attention of the trial court. *See id.* at 347–49. The Supreme Court held that a presumption of an actual conflict and accompanying automatic reversal of a conviction are appropriate only when the trial court fails to provide "a defendant who objects to multiple representation" with "the opportunity to show that potential conflicts impermissibly imperil his right to a fair trial." *Id.* at 348. Otherwise, "[u]nless the trial court knows or reasonably should know that a particular conflict exists, the court need not initiate an inquiry." *Id.* at 347.

¶16 In *State v. Webb*, 790 P.2d 65 (Utah Ct. App. 1990), this court applied the holdings in *Holloway* and *Cuyler* to a situation in which the defendant and his codefendant were represented by two attorneys from the same public defender office. *See id.* at 71-73. This court noted that the Sixth Amendment does not require a trial court to question the propriety of joint representation sua sponte unless the court knows or reasonably should know that a conflict exists because of the joint representation. *Id.* at 72–73. As the Supreme Court stated in *Cuyler*, "[a]bsent special circumstances, . . . trial courts may assume either that multiple representation entails no conflict or that the lawyer and his clients knowingly accept such risk of conflict as may exist." 446 U.S. at 346–47. *See also State v. Newman*, 928 P.2d 1040, 1043 (Utah Ct. App. 1996) ("[W]here counsel makes no objection at trial, the trial court may presume that no improper conflict due to joint representation is present."). Instead, the presumption of ineffective assistance and the automatic reversal remedy established by *Holloway* are triggered only when the trial court knew or should have known of a potential conflict and failed to investigate. *Webb*, 790 P.2d at 72–73. One such situation—

the one present in *Holloway*—is when a trial court fails to take adequate steps after a potential conflict is brought to its attention by an "objecting defendant." *Id.* at 73 ("The *Cuyler* court explained that the *Holloway* presumption of prejudice from a possible conflict of interest is only appropriate in cases where the trial court did not provide an objecting defendant with an opportunity to show that potential conflicts impermissibly imperil his right to a fair trial.") (quotation simplified).

¶17   The State misreads these cases as precluding a criminal defendant from raising an ineffective assistance claim based on a conflict of interest arising from joint representation without first showing she made a timely objection to the joint representation— a situation not present here. The State overlooks our cogent summary of the rule applicable to joint representation set out in *State v. Humphrey*, 793 P.2d 918 (Utah Ct. App. 1990):

> [W]here . . . the potential conflict is brought to the attention of the trial court by counsel before or during the early stages of trial, the trial court must take adequate steps to resolve the issue. If a trial court fails to investigate such a potential conflict of interest, we presume prejudice and reverse. A defendant who fails to bring a potential conflict to the attention of the trial court must show on appeal that an actual conflict of interest existed which adversely affected his or her lawyer's performance.

*Id.* at 922–23 (citations omitted).

¶18   Thus, under our precedent, Oreilly's failure to object to the attorney's joint representation does not preclude her from raising an ineffective assistance claim based on allegations of a conflict of interest arising from joint representation. Rather, her failure to timely object means that she does not benefit from an automatic reversal of her conviction. Instead, she is required to show the

existence of "an *actual conflict* which affected . . . her attorney's performance," and if she does make such a showing, she need not also "demonstrate prejudice." *Newman*, 928 P.2d at 1044 (emphasis added). Therefore, Oreilly is not required to show prejudice under the traditional ineffective assistance analysis, but she can prevail on the particular ineffective assistance claim she has raised only if she meets her appellate burden of showing that an actual conflict adversely affected her attorney's representation.[3]

## II. No Actual Conflict

¶19 Having determined that Oreilly's claim of ineffective assistance is properly before this court, we must address whether she has met her burden of showing the existence of an actual conflict of interest that affected her counsel's performance. "In order to show an actual conflict of interest existed, a defendant must point to specific instances in the record to suggest an actual conflict or impairment of his or her interests. There is no violation where the conflict is irrelevant or merely hypothetical; there must be an actual, significant conflict." *State v. Webb*, 790 P.2d 65, 75 (Utah Ct. App. 1990) (citations omitted).

¶20 In *Webb*, this court considered whether the appellant met his burden of showing an actual conflict where there was a "substantial disparity" in the evidence incriminating him and his jointly represented codefendant. *Id.* at 76. This court borrowed its substantial-disparity analysis from the Colorado Supreme Court's opinion in *Armstrong v. People*, 701 P.2d 17 (Colo. 1985) (en banc). *See Webb*, 790 P.2d at 76. In *Armstrong*, the jointly represented

---

3. Oreilly does not claim she is entitled to the presumption her counsel was ineffective because the trial court failed to investigate a potential conflict of which it knew or should have known. *See Cuyler v. Sullivan*, 446 U.S. 335, 346–47 (1980); *Holloway v. Arkansas*, 435 U.S. 475, 484–85 (1978).

defendants were charged with widely differing criminal activity and "the great bulk of the evidence introduced at trial was directed toward [one defendant's] alleged culpability." 701 P.2d at 22. Because of counsel's joint representation, he was unable to highlight the evidentiary disparities to the jury. *Id.* at 22–23. Under these circumstances, the Colorado Supreme Court held that the appellant met his burden of showing an actual conflict. *Id.* at 23–24. The *Armstrong* court explained the reasoning behind permitting a defendant to demonstrate an actual conflict by showing a substantial disparity in the evidence, stating that an actual conflict existed because "[f]or one defendant, the disparity should be emphasized to demonstrate the weakness of the case against and lesser culpability of that defendant. For the other defendant, any disparity in the quantity or quality of the evidence should be ignored or diminished." *Id.* at 22.

¶21 But this court reached the opposite conclusion in *Webb* on very different facts. There, two defendants represented by two public defenders from the same office were charged with aggravated robbery. *Webb*, 790 P.2d at 70–71. We held that there was no substantial disparity in the evidence notwithstanding the fact that there was eyewitness testimony identifying only one of the two defendants "as the robber in the store." *Id.* at 76. We noted that (1) there was testimony the codefendant was directly involved in the crime and (2) the jointly represented defendants both testified at trial and "gave entirely consistent, corroborative testimony" supporting their joint defense that other individuals were culpable for the criminal conduct charged against them. *Id.* For these reasons, we concluded that "counsel's loyalty was not divided between [two codefendants] with actual conflicting interests." *Id.*

¶22 We revisited the substantial disparity issue in *State v. Newman*, 928 P.2d 1040 (Utah Ct. App. 1996). We again distinguished *Armstrong* on the basis that the jointly represented defendants in *Newman* "were charged essentially with the same

crimes" whereas in *Armstrong* the defendants were charged with differing levels of participation in a single criminal episode. *Id.* at 1044–45. Thus, we concluded, "the likelihood of a conflict" was not present. *Id.* at 1045.

¶23 Oreilly argues there was a disparity in the weight of the evidence between the methamphetamine charges brought against her and Thompson because Thompson voluntarily admitted to law enforcement that all the items found in the vehicle belonged to him, but she admitted only to possession of the marijuana pipe and grinder.[4] According to Oreilly, voluntary admissions are among the strongest forms of evidence available to prosecutors and Thompson's admission is sufficient to establish the required substantial disparity. But *Webb*, *Newman*, and *Armstrong* all stand for the proposition that the substantial disparity inquiry is not focused solely on the quantum of evidence presented against each codefendant. As we stated in *Newman*, a disparity in evidence is not substantial unless the differing weight raises the "likelihood of a conflict" because, for example, the codefendants were charged with different conduct as in *Armstrong*. *See id.* That is not the situation here.

¶24 Oreilly and Thompson were charged with the same three crimes, and they presented the same defense at trial—attempting to attribute the drugs and paraphernalia to the owner of the vehicle. These circumstances are on the same footing as those in *Webb*, where the jointly represented defendants were both charged with the same crime—aggravated robbery—and they pursued the same defense of placing the blame on third parties. *See Webb*, 790 P.2d at 71, 76. Similarly, in *Newman*, the three

---

4. Because we conclude Oreilly is not entitled to relief on her ineffective assistance claim even if we consider Thompson's admission to law enforcement, it is not necessary to resolve the State's argument that Thompson's statement was inadmissible hearsay that Oreilly's attorney could not comment on at trial.

codefendants were charged with "essentially" the same crimes and presented the "common, unified defense" that the victim was the aggressor in the incident. 928 P.2d at 1045. In *Newman*, we concluded there was no likelihood of a conflict under these circumstances, distinguishing *Armstrong* by noting the codefendants in *Armstrong* were charged with "disparate . . . criminal conduct." *Id.* (quotation simplified). *See also Armstrong*, 701 P.2d at 22 ("[W]hen co-defendants are accused of *varying degrees of participation in an episode of criminal conduct*, joint representation invariably places defense counsel in the middle of conflicting interests.") (emphasis added).

¶25   Oreilly has not identified any case in which a jointly represented defendant charged with the same crimes as her codefendant has shown that a disparity in the weight of the evidence presented against each resulted in an actual conflict of interest. Nor is this a case in which the rule should be extended to such a situation, because even assuming the weight of the evidence against Thompson exceeded the weight against Oreilly, that disparity did not create the likelihood of a conflict.

¶26 Oreilly was charged with possession of methamphetamine, possession of marijuana, and possession of drug paraphernalia. "For possession charges, the circumstantial evidence necessary to convict is evidence showing a sufficient nexus between the accused and the contraband to permit an inference that the accused had both the power and the intent to exercise dominion and control over the contraband." *State v. Ashcraft*, 2015 UT 5, ¶ 19, 349 P.3d 664 (quotation simplified). A jury may consider, inter alia, "ownership and/or occupancy of the residence or vehicle, presence of the defendant when the contraband is discovered, the defendant's proximity to the contraband, previous drug use by the defendant (if the contraband is drug-related), incriminating statements or behavior, and presence of contraband in a specific area where the defendant had control." *Id.* (quotation simplified). Although

Thompson told officers he owned the drugs and paraphernalia, Utah law criminalizes *possession*, not *ownership*. Ownership is only one of numerous factors that a jury may consider when it evaluates whether a defendant is guilty of possession. *See id.*

¶27 Oreilly concedes the evidence against her "was not insignificant." As to the marijuana and paraphernalia charges, she specifically told the trooper and the sergeant that the pipe and a grinder belonged to her. The evidence showing Oreilly also possessed methamphetamine included her conversation with Thompson while they sat in the trooper's patrol car. She told Thompson she threw a syringe away in the rest stop bathroom. That statement is consistent with the trooper's testimony that Oreilly appeared to be under the influence of drugs when she exited the bathroom. There was also testimony Oreilly had needle marks and bruising on her arms, indicating previous drug use. Oreilly and Thompson also discussed the used syringes found in the vehicle and whether it was illegal to keep them after using them. Oreilly later told the trooper that any drugs officers found were methamphetamine, not heroin. And, critically, there was testimony that all the seized evidence was accessible to both the driver and the passenger.

¶28 Our review of the record confirms that any defense Oreilly's attorney could pursue on her behalf would not be materially aided by Thompson's admission that he owned all the drugs and paraphernalia. "[P]ossession of a controlled substance need not be exclusive and is often joint." *State v. Burdick*, 2014 UT App 34, ¶ 39, 320 P.3d 55, *cert. denied*, 329 P.3d 36 (Utah 2014). The State's evidence shows that Oreilly "had both the power and the intent to exercise dominion and control over the contraband" even if Thompson owned the contraband or also possessed it. *Ashcraft*, 2015 UT 5, ¶ 19 (quotation simplified). Thus, Thompson's admission of ownership did not diminish Oreilly's culpability on the possession charges, let alone potentially exculpate her of the charges. Under the circumstances here,

ownership was essentially irrelevant and Oreilly has not shown how her attorney could use Thompson's admission in her favor. Thus, there is no likelihood that any disparity in evidence gave rise to an actual conflict of interest.

## CONCLUSION

¶29 Because Oreilly has failed to demonstrate an actual conflict of interest that resulted in the denial of effective assistance of counsel, she is not entitled to the relief she seeks, and her convictions are affirmed.

———————